## A01A0083. HUMPHREY v. THE STATE.
(549 SE2d 144)

RUFFIN, Judge.

There is a lesson to be learned from an unyielding line that runs throughout the length of our legal system. And its singular logic is simple: harm is the adulterant that raises error to the level of dispo-

---

[6] See *Glean v. State*, 197 Ga. App. 34, 35 (4) (397 SE2d 459) (1990).
[7] See *Rucker*, supra.
[8] See id. at 856.
[9] Id.

sitional consideration. That principle, so firm and so fixed in our jurisprudence, is seldom, if ever, subject to inversal.

A jury found David Humphrey guilty of robbery by intimidation. On appeal, Humphrey contends that the trial court erred in (1) admitting evidence of a similar transaction, (2) permitting the victim to make a victim impact statement, and (3) commenting on the evidence. Humphrey also contends that he received ineffective assistance of counsel. Although we agree that error was committed below, Humphrey's inability to demonstrate harm mandates affirmance.

The record reflects that on the night of October 18, 1997, a man entered a convenience store and threatened to shoot the cashier if she did not give him "all [the] twenties" in the cash register. Delorse Morgan, the cashier, testified that although she could not see a gun, the assailant had his hand under his t-shirt, and she could see the imprint of a gun underneath the shirt. Morgan gave the man the money from the cash register, and he fled the store.

When the police arrived, Morgan described the robber racially, "about five ten, five eleven, 150, maybe 60 pounds, brown hair, dark brown hair, mustache," and she said he was wearing "a white T-shirt, like a baseball cap and plaid shorts, white socks, some kind of tennis shoes." John Wright, a customer who arrived at the convenience store as the robber fled, told the police that the robber had "a medium, small, slender build. He had short hair. He had a light mustache, goatee. He had a baseball cap on, T-shirt and some shorts."

Shortly after the robbery, the police showed Morgan several photo lineups that did not include Humphrey's photograph, and she did not identify the robber. In January 1998, following a subsequent robbery in which Humphrey was a suspect, the police created another photo lineup that included his photograph. When Morgan was shown this photo lineup, she immediately identified Humphrey as her assailant, and Humphrey was arrested and charged with armed robbery.

During the trial, the State introduced a video taken from the convenience store, which showed the robbery, but not the robber's face. However, both Morgan and Wright identified Humphrey at trial as the man who robbed the convenience store in October 1997. The State also introduced evidence of a similar transaction. Nicholas Mane testified that, in December 1997, Humphrey and two other males robbed him of his necklace and jacket. According to Mane, Humphrey wielded a pistol during the robbery.

Based upon this evidence, the jury found Humphrey guilty of robbery by intimidation.

1. In his first enumeration of error, Humphrey contends that the trial court erred in admitting evidence of the similar transaction, arguing that it was not sufficiently similar to warrant its introduc-

tion. In order to be admissible, similar transactions do not need to be identical to the crime charged.[1] Nonetheless, there must be a "sufficient connection or similarity between the independent act and the crime charged so that proof of the former tends to prove the latter."[2] Moreover, such evidence must be tendered for a proper purpose because "[a] defendant's guilt may not be proved by showing the commission of other crimes to prove that the accused has a criminal nature."[3]

Here, the trial court purportedly admitted the evidence to establish Humphrey's bent of mind and course of conduct. Under these circumstances, the issue is not one of mere similarity, but of relevance to the issues at trial.[4] Nevertheless, we do require a degree of similarity.[5] Otherwise, the exception of admissibility would swallow the rule of exclusion. Here, the only similarities between the two crimes are that both occurred at night and allegedly involved a handgun. Thus, there was a marked lack of similarity, and we fail to see any relevance other than improperly establishing "that the defendant committed the crime on trial because he is a man of criminal character."[6] Under these circumstances, the trial court erred in admitting evidence of the similar transaction.

Nevertheless, "error alone is not automatically grounds for a new trial but is subject to scrutiny for harmless error."[7] Here, both Morgan and Wright positively identified Humphrey as the man who robbed the convenience store. Given such unequivocal eyewitness identification, it is highly unlikely that the admission of the similar transaction evidence contributed to the verdict.[8] Thus, this claim of error presents no basis for reversal.

2. In his second enumeration of error, Humphrey asserts that

---

[1] See *Usher v. State*, 236 Ga. App. 663, 666 (3) (512 SE2d 380) (1999).

[2] *Guyton v. State*, 272 Ga. 529, 531 (3) (531 SE2d 94) (2000).

[3] (Punctuation omitted.) *Barnes v. State*, 191 Ga. App. 424, 425 (1) (382 SE2d 164) (1989).

[4] *Quezada v. State*, 236 Ga. App. 718, 720 (1) (512 SE2d 401) (1999).

[5] See *Guyton*, supra at 531-532 (in both offenses, the assailant walked by the victims before returning to point a silver handgun at them and to order them to relinquish their property); *Avery v. State*, 244 Ga. App. 177, 178-179 (1) (534 SE2d 897) (2000) (evidence admissible where "both incidents involved an assault and robbery; both victims were acquaintances of [the defendant]; both victims were shot in the left leg and robbed; and . . . the person who shot the victim worked with an accomplice"); *Johnson v. State*, 236 Ga. App. 252, 254 (1) (511 SE2d 603) (1999) (in both crimes, "the victims were older, a deadly weapon was used, . . . the attacks occurred at an outdoor ATM . . . after normal business hours . . . in commercial shopping areas, the victims were alone, and the attacker initiated physical contact with the victims after [they] received cash from the ATM").

[6] (Punctuation omitted.) *Barnes*, supra.

[7] (Punctuation omitted.) *Tanner v. State*, 243 Ga. App. 640, 643 (2) (533 SE2d 794) (2000).

[8] See id.; see also *Brooks v. State*, 232 Ga. App. 115, 116 (4) (501 SE2d 286) (1998).

the trial court erred in admitting prejudicial testimony from the victim. Specifically, Humphrey points to the following exchange, which took place during the State's case-in-chief: "Prosecutor: What has happened to you since this robbery? Morgan: Well, I know one thing. I'm not working at a convenience store anymore." Midway through Morgan's response, Humphrey's attorney interjected, "Your Honor, I . . . don't quite understand the relevance of that. She can testify about the robbery and identifying somebody, but I don't see the relevance of that." The trial court permitted the prosecutor to "establish" relevance, and the prosecutor responded that the testimony was relevant "[b]ecause of what [Morgan] went through, she's going to make darn sure she gets the right guy who caused her all this." Humphrey's objection was not renewed, and the prosecutor asked the question a second time. Morgan then testified that, following the robbery,

> I wouldn't work in a convenience store no more [sic]. It's too dangerous. I don't like the dark anymore. I didn't use to be afraid of the dark. I am now. And after this happened I didn't eat very well. I didn't sleep very well. My son suffered from it because I wasn't doing very well. And I quit my job because of it. And I was a single parent. I had to raise my child on my own and with no support from nobody [sic]. And he just caused my life to be a little bit out of whack for awhile, and it still bothers me but not like it did. But it still causes problems because I don't like being afraid of the dark. I'm a grown woman. I'm 32 years old. I don't need to be afraid of the dark.

During this entire soliloquy, no objection was made. On appeal, however, Humphrey asserts that the trial court erred in allowing Morgan to make a "victim impact statement" during the middle of the trial. Pretermitting whether the trial court erred in admitting this testimony, Humphrey waived the error by failing to timely object. "It is well-settled in this state that it is too late to urge objections to the admission of evidence after it has been admitted without objection."[9] Here, Humphrey never actually objected to Morgan's testimony, but merely commented that he failed to see its relevance. And, during Morgan's lengthy response, Humphrey interposed no objection. Having failed to object, Humphrey has waived this issue on appeal.[10]

---

[9] (Punctuation omitted.) *Rupert v. State*, 239 Ga. App. 128, 131 (1) (a) (520 SE2d 695) (1999).

[10] See id.

3. In his third enumeration of error, Humphrey asserts that the trial court erred in commenting on the evidence. During its deliberation, the jury asked to see the videotape of the robbery again. As the tape was playing, one juror asked the court to "stop [the video] of him going out the door." The trial court, apparently seeking clarification, asked, "When he leaves, Defendant goes out the door?" Humphrey argues that the court erred in commenting on the evidence by suggesting that it was the *defendant* leaving the store. However, as Humphrey acknowledges, no objection was made at trial. Thus, he has waived appellate review of this issue.[11]

4. In his fourth and final enumeration of error, Humphrey contends that he received ineffective assistance of counsel at trial. Specifically, Humphrey asserts that his trial counsel was ineffective for failing to object to the trial court's comment to the jury and failing to obtain evidence of his innocence. In order for Humphrey to prevail on this claim, he must establish (1) that his attorney's performance was deficient and (2) that he was prejudiced by such deficiency — i.e., that there is a reasonable probability that the trial would have turned out differently but for the deficient performance.[12] Moreover, "[a] finding by the trial court that the defendant did not receive ineffective assistance of counsel will be affirmed unless clearly erroneous."[13]

With respect to trial counsel's failure to object to the trial court's comment during jury deliberation, we find no error. Pursuant to OCGA § 17-8-57, it is reversible error for any judge to "express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." However, comments that are ministerial do not violate this Code section.[14] Here, the trial court was attempting to ascertain where the jurors wanted the video stopped. Thus, in asking the juror if he wanted the tape stopped when the defendant went out the door, the trial court was merely engaging in a ministerial task. Although it would have been preferable had the trial court used the word "suspect" rather than "defendant," Humphrey's attorney's failure to object to such ill-chosen diction does not warrant reversal. Indeed, at the hearing on the motion for new trial, Humphrey's trial attorney testified that he did not object to the trial court's statement because he did not want to emphasize the comment. This type of tactical decision does not equate to ineffective assistance of counsel.[15]

Humphrey also contends that his trial counsel was ineffective in

---

[11] See *Anglin v. State*, 173 Ga. App. 648, 652 (5) (327 SE2d 776) (1985).

[12] See *Abney v. State*, 240 Ga. App. 280, 283 (3) (523 SE2d 362) (1999).

[13] (Punctuation omitted.) Id.

[14] See *Bradford v. State*, 221 Ga. App. 232, 237 (7) (471 SE2d 248) (1996).

[15] See *Slade v. State*, 270 Ga. 305, 307 (2) (509 SE2d 618) (1998).

failing to obtain a videotape from a Halloween party taken shortly after the robbery. According to Humphrey, the video, which showed that he had long hair at the time of the robbery, would have demonstrated that he was not the person who robbed the store. During the hearing on Humphrey's motion for new trial, his trial counsel testified that he did not recall Humphrey telling him about the videotape. Assuming, for the sake of argument, that Humphrey did tell his attorney about the tape, he is still unable to establish a claim of ineffective assistance. Even if the attorney's performance can be characterized as deficient, Humphrey cannot prevail unless he can establish prejudice.[16] Here, two eyewitnesses unequivocally identified Humphrey as the perpetrator. Given such evidence, it is unlikely that jurors would have been swayed by a videotape purporting to show how Humphrey looked at the time of the robbery.[17]

Moreover, in reviewing a trial court's ruling on a claim of ineffective assistance, we must give proper deference to the trial court's factual findings.[18] After viewing the video, the trial court evidently concluded that its omission from the trial did not prejudice the defendant because the trial court denied Humphrey's motion for new trial. Unlike the trial court, this Court has not had an opportunity to observe the defendant and to compare his appearance at trial to his appearance in the video. Accordingly, this Court is in no position to gainsay the trial court's ruling. Under these circumstances, Humphrey has failed to carry his burden of proving by the record that he was prejudiced by his defense, and we must uphold the trial court's conclusion that he received effective assistance of counsel.[19]

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MAY 4, 2001 —
RECONSIDERATION DISMISSED JUNE 4, 2001.

*William J. Mason,* for appellant.
David B. Humphrey, *pro se.*
*J. Gray Conger, District Attorney, Margaret E. Bagley, Assistant District Attorney,* for appellee.

---

[16] See *Abney,* supra.
[17] See *Wright v. State,* 267 Ga. 496, 497 (2) (b) (480 SE2d 13) (1997).
[18] See *Kidwell v. State,* 264 Ga. 427, 432 (11) (444 SE2d 789) (1994).
[19] See id.